## UNITED STATES v. 168.8 ACRES OF LAND, SCOTLAND COUNTY, N. C. (GARDNER et al., Defendants).

### Civ. No. 16R.

District Court, Middle District of North Carolina.

Nov. 6, 1940.

Robert S. McNeill, Asst. U. S. Atty., of Mocksville, N. C., for the United States.

H. F. Seawell, Jr., and W. R. Clegg, both of Carthage, N. C., Thomas J. Dunn, of Laurinburg, N. C., and W.. A. Leland McKeithen, of Pinehurst, N. C., for Gardners.

HAYES, District Judge.

On the 12th day of September this court after a hearing granted to all parties claiming any interest in the fund of the 86 acres acquired by the United States in this proceeding, decided that M. H. Gardner was entitled to the entire amount of the proceeds which should be applied as a credit on the judgment of the Standard Fertilizer Co. v. Percy L. Gardner and that none of the other parties were entitled to any part of the said proceeds.

The Bank of Pinehurst was a party to that proceeding and participated in that hearing. On the 23rd day of September, 1939, the Bank of Pinehurst filed a cross-complaint and petition alleging that the judgment of the Standard Fertilizer Co., Inc., v. Percy L. Gardner, had been paid off in full and should be retired from the records as a lien, and also alleged that if it had not been satisfied, it had been discharged by release on November 30, 1936, and if it is not discharged that M. H. Gardner as assignee of said judgment, was holding the judgment as trustee for defendant Percy L. Gardner. P. L. Gardner and M. H. Gardner filed an answer to this cross-complaint and denied the allegations thereof.

The cause came on for trial before the court at the September term, 1940, at which time evidence was offered in support of the pleadings and the matter was argued and briefs filed.

The evidence was wholly insufficient to sustain the allegations of the bank and the judgment of distribution in favor of M. H. Gardner entered in 1939 must be reaffirmed. The Bank of Pinehurst holding a second judgment against Percy L. Gardner endeavored to establish priority to the fund by showing satisfaction of the prior judgment in favor of the Standard Fertilizer Works. On July 3, 1931, the Standard Fertilizer Co. docketed a judgment in Scotland County against Percy L. Gardner for $2,985.55 with interest from July 6, 1931, and costs in favor of plaintiff. This judgment was duly assigned to M. H. Gardner, a son of Percy L. Gardner, on November 30, 1933, which assignment was recorded in Scotland County November 24, 1934, which judgment was a lien against tract No. 57 containing 86 acres. On the 19th day of November, 1934, Percy L. Gardner executed an option to the United States to convey said 86 acres of land at the price of $6.50 per acre and agreed that he would deliver a title to the said land that was acceptable to the United States and, failing to do so, the United States could condemn the land and he would take the option price therefor. The option contained this clause, "The undersigned agree that the procedure and terms shall be as required by the United States Attorney General. The conveyance is to be by warranty deed in the form, manner and at the time desired by the Attorney General; payment is to be made after the deed has

been recorded and after the Attorney General has declared the title to be vested in the United States; all taxes, liens and incumbrances are to be paid by the undersigned, including expenses incidental to the execution of the deed, and the undersigned will obtain and record such evidences of title as may be requested by the Attorney General."

The option contains another paragraph, "It is understood and agreed that if the Attorney General determines that the title should be acquired by the United States by judicial procedure, either to procure a more safe title, or to obtain title more quickly or any other reason, then the compensation to be claimed by the owners and the award to be made for said lands in said proceeding shall be upon the basis of the purchase price herein provided."

The United States government elected to take the lands under the terms of the option and went into possession thereof in November, 1936.

F. W. McClure, Jr., acted for the Attorney General in passing upon the title, and he prepared and requested Percy L. Gardner to obtain a release of the judgment which had been assigned to Melvin H. Gardner and recorded, and he also prepared a deed of conveyance to be executed by Percy L. Gardner and wife and which was to be recorded. The release and deed were both filed simultaneously for recordation on December 12, 1936, and were recorded on that day. Mr. McClure assured Mr. Percy L. Gardner that the release of the tract of land from the operation of the judgment was the only obstacle in the way and if these documents were executed the Attorney General would take the land by deed and avoid the delay of condemnation. P. L. Gardner, relying upon this representation by the government's attorney, made the same representation to M. H. Gardner and on the strength thereof obtained from him the execution of the release upon the promise from Percy L. Gardner to turn over the proceeds to be credited on the judgment. The government's attorney approved the conveyances and the check for the proceeds was prepared in Washington and forwarded here, but before it was delivered Standard Fertilizer Works asserted the right to participate in the funds claiming that a cost item of $380.50 had not been assigned M. H. Gardner. The controversy was not settled and the Attorney General filed a peti-

tion in condemnation on the 30th day of June, 1939, and the judgment of condemnation was entered the 30th day of June, 1939. The purchase price was paid into the registry of this court on July 7, 1939. On the 26th day of December, 1932, the Bank of Pinehurst obtained a judgment in Moore County against L. L. Gardner and P. L. Gardner for the sum of $1,950 with interest from April 2, 1932, until paid and costs amounting to $18 subject to a credit of $25 on May 25, 1932, but this judgment was not docketed in Scotland County so as to become a lien against tract 57 until October 8, 1938. It is contended by the bank that the release executed by M. H. Gardner, assignee, which was recorded, released the judgment as a lien as to this tract of land and made the bank's judgment the first lien against the proceeds derived from the sale of the land.

If the government had accepted the warranty deed executed by Percy L. Gardner as was contemplated when M. H. Gardner executed the release and had paid the purchase money in 1936 the bank would have had no lien. The question therefore arises as to the effect of the release under the circumstances above stated. That the release of this tract of land from the operation of the Gardner judgment was executed under a mistake of fact is beyond controversy. This was not the only obstacle which prevented the United States from accepting title to the land by deed. Attorney McClure, M. H. Gardner and Percy L. Gardner all acted upon the assumption that M. H. Gardner as assignee owned the judgment and that he had a right to release the judgment as a lien against the tract. The Gardners believed that if M. H. Gardner executed the release, the title would be accepted and that the proceeds would be paid over to him without delay. They were ignorant of the claim asserted by the fertilizer company to the item of costs and this contention on its part prevented the Attorney General from accepting the title by conveyance and caused him to resort to condemnation with its incident delay. But it is significant that the United States went into possession of the land in 1936 when the deed of conveyance was actually recorded and the condemnation proceedings were resorted to for the purpose of clearing up any defect in title. The judgment still subsisted; it was never cancelled and indeed there was no consideration to support the execution of the release except the agreement to apply the proceeds when received in satisfaction of the judgment. The release was executed for the purpose of obtaining the proceeds without delay, otherwise there would have been no reason for the execution of the release. The fact that the Attorney General subsequently declined to accept the conveyance under these circumstances and thereby nullifying the transfer by a deed would have a like effect in so far as the release is concerned in the absence of proof that somebody extended credit or acquired title in ignorance of the facts as they then existed.

■ If the United States had not condemned the land or accepted the deed there can be no doubt of the right of M. H. Gardner to have the release cancelled on the ground of mistake and I am unable to see why the same principle should not apply where the fund is in the hands of the court whose duty it is to see that it is paid out to the parties properly entitled thereto. The bank's position has not been affected one way or the other by virtue of the release. It is asserting here a highly technical claim to the fund involved, based on the assumption that the release once executed forever destroys the judgment so far as this tract of land is concerned, but this ignores the power of a court of equity to rectify mistakes and to set aside a release which has been obtained on account of it.

■ It is a generally accepted rule that where a mortgage or other lien on real estate has been released or satisfied through mistake, it may be restored in equity and given its original priority as a lien. 41 C.J. 586. Security Trust Co. v. Martin, 178 Ark. 518, 12 S.W.2d 870, provided no injury is inflicted on one who has innocently relied on the release and either purchased the property or made a loan thereon on the strength of such cancellation. The authorities hold that where the release or satisfaction of a lien is the result of fraud, accident or mistake, it will not inure to the benefit of a person acquiring an interest in the property who did not rely or advance anything on the faith of such discharge. 41 C.J. 590. Southerland v. Fremont, 107 N.C. 565, 12 S.E. 237. In the latter case it was held that the release could be cancelled as against a subsequent mortgage which was given to secure a pre-existing debt. The restoration of the judgment as to the tract of land in question can not operate prejudically or place the Bank of Pinehurst in a worse position

than it would have been if the release had not been executed. 41 C.J. 590. Lumber Exchange Bank v. Miller, 18 Misc. 127, 40 N.Y.S. 1073, 1076. In the above case it is said: "It is a familiar doctrine, repeatedly asserted by many tribunals, that a court of equity will keep an incumbrance alive or consider it extinguished as will best serve the purposes of justice. * * * The principle which underlies all the reported decisions in this class of cases is, when the legal rights of the parties have been changed by mistake, equity restores them to their former condition, when it can be done without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other parties."

That case involved the rights of the holder of a first and second mortgage who cancelled them and took another mortgage in lieu thereof but in ignorance of the existence of a third mortgage. The release was cancelled. To the same effect is Pomeroy's Equity, Section 871. "Where an instrument has been surrendered, or discharged, or an incumbrance or charge has been satisfied through mistake, the jurisdiction may be exercised by granting such relief as will replace the party entitled in his original position either by setting aside the formal discharge or compelling a re-execution of the instrument, except as against a bona fide purchaser for value without notice. See, also, Miller v. Wack, 1 N.J.Eq. 204, Berger v. Kingsport Press, 6 Cir., 89 F.2d 444.

It was contended by the Gardners that the recordation of the warranty deed to the United States divested him of title, relying upon Lynch v. Johnson, 171 N. C. 611, 89 S.E. 61. The Attorney General had a right to accept or reject the deed after it was recorded and he rejected it. The presumption of a delivery of a deed upon its recordation can be rebutted. This court had occasion to review the authorities which were set forth in a recent decision by this court in Watson v. United States, 34 F.Supp. 777, decided in 1940. Nor is it necessary now to restate the authorities. Nor does the doctrine of subrogation apply here as contended by the Gardners relying on Wallace v. Benner, 200 N.C. 124, 156 S. E. 795, in which a party paying off liens was subrogated to the liens which he had discharged.

The court has carefully considered the authorities relied upon by the bank but finds nothing in those decisions to contravene the position taken by this court.

A judgment will be entered awarding the fund in question to M. H. Gardner and taxing the Bank of Pinehurst with the costs.