Patricia G. ULANET, Plaintiff,

v.

D'ARTAGNAN, INC., et al., Defendants.

No. 00–CV–03457(NGG).

United States District Court,
E.D. New York.

Oct. 31, 2001.

Shari L. Steinberg, Swidler Berlin Shereff Friedman, LLP, New York City, Duke K. McCall, III, Jessica Y. Brewster, Michael L. Spafford, Swidler Berlin Shereff Friedman, LLP, Washington, DC, for Plaintiff.

Christian H. Gannon, Peter W. Beadle, McGivney & Kluger, James P. Donovan, Wilson, Elser, Moskowitz, Edleman & Dicker, LLP, New York City, for Defendants.

### MEMORANDUM & ORDER

GARAUFIS, District Judge.

In this strict products liability action, Plaintiff Ulanet ("Plaintiff") moves to have Gourmet Cuisine Corp. ("Gourmet") declared the successor in interest to Hannelore Gourmet Foods, Ltd. ("Hannelore"). Plaintiff proceeds under theories of de fac-

to merger and continuation of the corporate entity.[1]

*Background*

The following facts are taken from uncontested portions of Pl.'s Mem. of Law in Supp. of Mot. to Have Gourmet Cuisine Corp. Declared the Successor in Interest to Hannelore Gourmet Foods, Ltd. and Def.'s Mem. of Law in Opp'n to a Decl. Naming Gourmet Corp. Declared the Successor in Interest to Hannelore Gourmet Foods, Ltd.

In 1999, Plaintiff suffered severe illness and a miscarriage, allegedly due to the food product paté produced by Hannelore and D'Artagnan, Inc. ("D'Artagnan"). Following Plaintiff's illness and an investigation by state and federal health agencies, Hannelore and D'Artagnan issued a series of recalls for products made at Hannelore's facility. On February 1, 2000, approximately one month after the last recall, Hannelore entered into an agreement with America's Sports Voice ("ASV"), pursuant to which ASV agreed to manage Hannelore's business and finances. ASV then moved into the Hannelore facility. In April 2000, ASV entered into an agreement with the owners of Hannelore, Frank Casciari and Norman Bieber, to acquire Hannelore. Pursuant to this agreement, Casciari and Bieber sold all of the stock of Hannelore's parent corporation, Gourmet Cuisine International, Ltd. ("GCI"), to ASV for shares of ASV stock.

On June 13, 2000, Plaintiff filed this action. On June 27 or 28, 2000, ASV created Gourmet, a wholly owned subsidiary. Gourmet subsequently acquired the assets and business of Hannelore, and con-

---

1. Case law indicates a sufficient overlap between merger and continuation theories to subsume both under a discussion of de facto merger. *See Lumbard v. Maglia, Inc.,* 621 F.Supp. 1529, 1535 (S.D.N.Y.1985). At any rate, because this court finds a de facto merger has occurred, this court need not address any independent theories raised by Plaintiff under continuation theory.

tinues to operate Hannelore's food business.

Upon the creation of Gourmet, Casciari resigned as President of Hannelore and became President of Gourmet. Mark Windhurst, sous chef of Hannelore, became executive chef of Gourmet. Gourmet became the custodian of the Hannelore facility and Hannelore records. Gourmet continued, in the Hannelore facility, to produce products previously produced by Hannelore, including D'Artagnan products produced pursuant to a co-packing agreement between Hannelore and D'Artagnan. Gourmet also employed largely the same employees employed by Hannelore. Additionally, according to representations before this court by Hannelore's counsel, Hannelore ceased to exist as a viable business entity following Gourmet's acquisition of Hannelore's assets and business.

*Discussion*

"A corporation that acquires the assets of another corporation does not automatically assume the liabilities of the predecessor corporation." *Kessenich v. Raynor*, 120 F.Supp.2d 242, 255 (E.D.N.Y. 2000) (Garaufis, J.) (citing *Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1534 (S.D.N.Y.1985)); *accord, Schumacher v. Richards Shear Co., Inc.*, 59 N.Y.2d 239, 464 N.Y.S.2d 437, 451 N.E.2d 195 (1983). "Liability is assumed only if one of four criteria is met: (1) the successor corporation either expressly or impliedly agrees to assume the predecessor's liabilities; (2) the transaction is a de facto merger; (3) the successor may be considered a mere continuation of the predecessor; or (4) the transaction is fraudulent." *Id.*

"For a de facto merger to occur, there must be continuity of the successor and predecessor corporations, as evidenced by: (1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically

and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (4) a continuity of management, personnel, physical location, assets, and general business operations.... Not all of these factors are necessary to demonstrate a merger; rather these factors are only indicators that tend to show a de facto merger." *Kessenich v. Raynor*, 120 F.Supp.2d 242, 255–56 (E.D.N.Y.2000) (Garaufis, J.) (internal quotations omitted) (citing *Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1534 (S.D.N.Y.1985)).

The record demonstrates that, pursuant to the first prong of the foregoing test, there is continuity of ownership between Hannelore and Gourmet, insofar as Hannelore was acquired pursuant to the sale of 100% of the stock of GCI, Hannelore's parent corporation. Gourmet, however, suggests that uniformity of ownership, and not mere continuity, is necessary for a finding of de facto merger. Gourmet argues that, upon the sale from Casciari and Bieber to ASV, ownership changed from private to public, destroying uniformity of ownership, and thus barring a finding of de facto merger. But even those courts considering uniformity as a factor have held uniformity less significant than continuity. "[N]ot only is identity of ownership one of several factors, but the cases uniformly hold that continuity, not uniformity, is the significant variable." *Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1535 (S.D.N.Y.1985).

The second prong of the test appears satisfied insofar as Hannelore's counsel has indicated that Hannelore has ceased to do business and was dissolved subsequent to Gourmet's acquisition of Hannelore's assets. Furthermore, Gourmet's assumption of Hannelore's contractual duties under

the co-packing agreement with D'Artagnan demonstrates a continuation of the business of the predecessor, in satisfaction of the third prong of the test. Lastly, with respect to the fourth prong of the test, the physical location and assets of Gourmet are identical to those of Hannelore, and the management, personnel, and general business operations are all substantially similar. Thus, the test for a de facto merger is substantially satisfied on the facts before the court.

Gourmet suggests that, despite the foregoing analysis, *Grant–Howard Assocs. v. General Housewares Corp.*, 63 N.Y.2d 291, 482 N.Y.S.2d 225, 472 N.E.2d 1 (1984), compels the court to find against a de facto merger. *Grant–Howard*, however, concerned allocation of risk between successor and predecessor corporations, and is inapposite to the case before this court. In *Grant–Howard*, two corporations merged pursuant to a contract which expressly limited the successor corporation to all liabilities existing as of the closing of the merger. Consequently, the predecessor corporation could not seek indemnity from the successor for tort liability accruing years after the closing. The *Grant–Howard* Court held that allocation of risk between predecessor and successor corporations, while valid between the contracting parties, would not bar an outside injured party from "proceed[ing] against the defunct corporation, the successor corporation, or both." *Grant–Howard*, 63 N.Y.2d at 297, 482 N.Y.S.2d 225, 472 N.E.2d 1. The case before this court involves an outside injured party seeking to proceed against both predecessor and successor corporations, and is expressly permitted under *Grant–Howard*.

Thus, the test for a de facto merger is satisfied here, and there are no countervailing arguments against a finding of successor in interest. This court therefore finds that Gourmet constitutes a successor in interest to Hannelore.

SO ORDERED.