**Richard HADAR, Plaintiff,**

v.

**CONCORDIA YACHT BUILDERS, INC., Concordia Custom Yachts, Inc., System Three Resins, Burlington Industries, Inc., Northern Fiberglass Sales, Inc., and RP Associates, Inc., Defendants.**

No. 92 Civ. 3768 (RLC).

United States District Court, S.D. New York.

April 13, 1995.

Miller Cooke & Rohrberg (Bradford Cooke and Scott Miller, of counsel), New York City, for plaintiffs.

Wilson, Elser, Moskowitz, Edelman & Dicker (Debra A. Tama, of counsel), New York City, for defendant Concordia Yacht Builders, Inc.

Kirkpatrick & Lockhart (John R. Dingess and George B. Foster, of counsel), Pittsburgh, PA, Eaton & Van Winkle (Thomas A. Hickey, of counsel), New York City, for defendant Concordia Custom Yachts, Inc.

Quirk & Bakalor, P.C. (Robert E. Quirk, of counsel), New York City, for defendant System Three Resins.

Kreindler & Relkin, P.C. (S. Robert Schrager and Michael G. Goldberg, of counsel), New York City, for defendants Burlington Industries, Inc. and Northern Fiberglass Sales, Inc.

Hawkins, White, Feretic, Daly, O'Neill & Maroney (Thomas Maroney and Raymond Power, Jr., of counsel), New York City, for defendant RP Associates, Inc.

ROBERT L. CARTER, District Judge.

Defendants Concordia Custom Yachts, Inc. ("Concordia Custom") and Burlington Industries, Inc. ("Burlington") assert that they are improper parties and move for summary judgment on the causes of action asserted against them by the plaintiff and on the cross-claims asserted against them by co-defendants. All defendants move for summary judgment on plaintiff's strict liability and negligence causes of action on the grounds that solely economic damages are alleged. Defendants System Three Resins ("System Three"), Burlington, Northern Fiberglass Sales, Inc. ("Northern") and RP Associates, Inc. ("RP Associates") move for summary judgment on plaintiff's breach of warranty causes of action against them on the grounds that they are not in privity with plaintiff. Defendants Concordia Yacht Builders, Inc. ("Concordia Yacht") and Concordia Custom move for summary judgment on plaintiff's breach of warranty causes of action against them and on the issue of plaintiff's entitlement to consequential damages for breach of warranty. Concordia Yacht requests that in the event that the court dismisses the action against Burlington for a reason other than a finding that Burlington is not a proper party, then the court should convert Concordia Yacht's counter-claims against Burlington into cross-claims. Northern moves for summary judgment on the cross-claims brought against it by Concordia Custom, RP Associates and System Three. Finally, plaintiff moves to amend the complaint and seeks partial summary judgment as regards liability.

The court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 (1988).

### I. Background

Defendant Concordia Yacht built the "Josher III," a fifty-two foot custom yacht, for plaintiff Richard Hadar. The hull and deck of the yacht were covered by a fiberglass and epoxy laminate consisting of layers of fiberglass combined with epoxy resin. Concordia Yacht constructed the laminate according to the vacuum-bagging method, in which a layer of fabric known as peel ply is used to release the vacuum bag from the laminate. The Phase Two epoxy resin used in the Josher III was manufactured by defendant System Three and distributed by defendant RP Associates, and the Super Release Blue Peel Ply ("SRB Peel Ply") used in the manufacture of the Josher III was manufactured by Precision Fabrics and distributed by defendant Northern.

During the course of the yacht's construction, portions of the deck were removed. Donald Watson, an employee of Concordia Yacht, noticed that the layers of laminate on

the removed portions had not bonded properly, causing a condition called "delamination." Watson sent the samples to RP Associates, which in turn sent the samples to System Three. System Three analyzed the samples and concluded in January, 1989, that the improper bonding was caused by an incompatibility between the SRB Peel Ply and the Phase Two epoxy resin.

Before delivery of the yacht, Watson noticed flaws in the laminate, which he characterized as print-through, a cosmetic problem that occurs when resin shrinks as a result of exposure to heat. Concordia Yacht attempted to address the problem by sanding and repainting the hull. The yacht was delivered to plaintiff on May 26, 1989. Late in the summer of 1989 Watson again noticed what he characterized as print-through on the hull, and during the summer of 1990 Concordia Yacht repainted the boat at Hadar's expense. During the fall of 1990, Watson noticed another flaw in the hull, which he characterized as delamination. In an attempt to remedy the problem, Hadar had the flawed areas of the laminate repaired at the Derecktor Shipyard, and he later had the entire laminate removed and replaced. Hadar alleges that during the repair process the yacht was suspended upside-down for an extended period of time, causing damage to various parts of the yacht.

## II. Burlington Motion for Summary Judgment

Burlington asserts that it did not manufacture the peel ply at issue in this case and moves for summary judgment on the negligence and strict liability causes of action asserted against it by plaintiff and on the cross-claims asserted against it by Concordia Yacht, Concordia Custom, RP Associates, and System Three. A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Rule 56(c), F.R.Civ.P. The moving party can carry this burden "merely by pointing out that there is an absence of evidence to support the non-moving party's claims." *Pressman*

*v. Estate of Steinvorth,* 860 F.Supp. 171, 176 (S.D.N.Y.1994) (Carter, J.) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). When the moving party has met its burden, the adverse party can defeat the motion only if it can "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), F.R.Civ.P. "[M]ere allegations in the non-moving party's pleadings are insufficient to show that there is a triable issue of fact," *Project Release v. Prevost,* 722 F.2d 960, 969 (2d Cir.1983),—to meet his burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). For the purpose of this motion, facts must be viewed in the light most favorable to the non-moving party, *id.* at 587, 106 S.Ct. at 1356, and "when the factual allegations in the pleadings of the party opposing summary judgment are supported by affidavits or other evidentiary material, they must be taken as true." *First Nat'l Bank of Cincinnati v. Pepper,* 454 F.2d 626, 629 (2d Cir.1972).

Hadar contends that Burlington was either the manufacturer or the seller of the SRB Peel Ply used in the laminate of the Josher III. It is uncontroverted that the peel ply at issue was manufactured and sold by Precision Fabrics and that prior to February, 1988, Precision Fabrics was a division of Burlington. The issue is whether Burlington has shown that there is an absence of evidence to support Hadar's claim that Precision was still a division of Burlington on the date of the sale of the peel ply. Plaintiff contends that the sale occurred in September 1988, while Burlington contends that it occurred in May 1988. Both parties support these allegations with invoices for the sale of peel ply addressed to Concordia Yacht, creating an issue of fact regarding the exact date of sale. It is undisputed, however, that the sale occurred no earlier than May 1989.

Burlington alleges that it sold its Precision Fabrics division ("Precision division") to Precision Fabrics Group, Inc. ("Precision, Inc.") on February 17, 1988, and thus was neither the manufacturer nor the seller of the peel

ply purchased by Concordia in May 1988. As evidence of this sale, Burlington points to a purchase agreement between Burlington and Precision, Inc. dated February 8, 1988, and signed by Burlington's vice chairman and the president of Precision, Inc. In this agreement, Burlington promises to sell and Precision, Inc. promises to buy the Precision division on the closing date, but each party's promises are conditional on the performance of certain obligations by the other party at or prior to the closing. There is a "Bill of Sale and Assignment" dated February 17, 1988, attached as an exhibit to the purchase agreement, but this document is unsigned and therefore does not provide admissible evidence that the conditions were ever waived or met and that the sale was completed.

Despite the absence of a signed closing document, however, there is ample evidence before the court that Burlington sold its Precision division prior to May, 1988. Burlington submits a sworn affidavit of Charles Stricklen, manager of the Accounts Payable Department of Burlington, stating that on February 17, 1988, Burlington sold its division which produced the SRB Peel Ply to Precision, Inc. and that after that date Burlington did not sell SRB Peel Ply. Affidavits submitted in support of summary judgment motions "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 56(e), F.R.Civ.P. Here, the affidavit is admissible because it is based on the personal knowledge of Mr. Stricklen, sets forth only those facts to which he is competent to testify, and shows that he is competent to testify to the matters stated therein. Furthermore, Hadar does not object to the use of this affidavit for purposes of this motion, and therefore the court is free to consider it.

To counter Stricklen's allegation, Hadar points to commission statements paid to Northern monthly from March 10, 1988, to October 6, 1988, for sales made to Concordia. Although the commission statements bear the Precision, Inc. letterhead, the checks were drawn on Burlington's account through September 1988. Hadar asserts that this provides proof that Burlington had some involvement with the manufacture and sale of the SRB Peel Ply, but he offers no evidence for this contention. Stricklen avers that the commission checks were drawn on a Burlington account solely because Burlington and Precision, Inc. had a service agreement in which Burlington charged Precision, Inc. for performing bookkeeping services. This affidavit, based on Stricklen's personal knowledge as manager of Burlington's Accounts Payable Department, provides ample evidence that Hadar's allegation of Burlington's responsibility for the manufacture and sale of the SRB Peel Ply is unfounded. Where, as here, the moving party has presented evidence which the non-moving party counters only with bare conjecture, summary judgment is appropriate. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1355.

■ Hadar contends that even if Burlington sold its Precision division in February, 1988, Precision, Inc. remained a department or division of Burlington after that date because the management of the Precision division of Burlington became shareholders of Precision, Inc. Burlington denies this allegation, pointing to its sale of its Precision division and the resultant separate corporate identities of Precision, Inc. The issue is whether the court may disregard Precision, Inc.'s separate corporate identity and pierce its corporate veil. The court need not decide which state's law to apply to this issue, because the applicable law in New York, Massachusetts, and North Carolina (the place of incorporation of Burlington) prohibits the court from piercing the veil in this case. In all three states, a court may pierce a corporate veil only if there is evidence that, among other things, such a measure is necessary to prevent a fraud, a wrong, or a gross inequity. *New York Ass'n for Retarded Children, Inc., Montgomery County Chapter v. Keator*, 199 A.D.2d 921, 606 N.Y.S.2d 784, 785 (App.Div. 1993); *Statesville Stained Glass, Inc. v. T.E. Lane Constr. & Supply Co.*, 110 N.C.App. 592, 430 S.E.2d 437, 440 (1993); *NCR Credit Corp. v. Underground Camera, Inc.*, 581 F.Supp. 609, 612 (D.Mass.1984). Hadar has not claimed that Burlington either sold its Precision division or is now disregarding the separate corporate identities of Burlington

and Precision, Inc. in order to perpetrate a fraud or to injure some third party, and therefore he has not proffered evidence sufficient to raise a question of fact regarding whether the veil should be pierced.

■ Hadar claims that Burlington may not raise "the issue of manufacture of the product by a successor corporation as a defense because Burlington failed to assert the facts as an affirmative defense in their answer," (Pl.'s Revised Mem. in Opp'n to Mot. for Summ.J. by Defs. Concordia Custom, Burlington, & Northern, at 9), as required by Rule 8(c) of the Federal Rules of Civil Procedure, and that he consequently waived his right to assert this defense pursuant to Rule 12(h)(1), F.R.Civ.P.

The claim that a product at issue in a case was manufactured by another corporation is not one of the enumerated defenses that must be pled affirmatively pursuant to Rule 8(c), F.R.Civ.P. Nor does Hadar cite any cases holding that this defense falls under the residual clause of Rule 8(c) which includes as an affirmative defense "any other matter constituting an avoidance or affirmative defense." A defense is not affirmative where it "merely negates an element of the plaintiff's prima facie case." *Marino v. Otis Eng'g Corp.*, 839 F.2d 1404, 1407 (10th Cir. 1988) (quoting *Sanden v. Mayo Clinic*, 495 F.2d 221, 224 (8th Cir.1974)). Burlington's manufacture of the SRB Peel Ply is an element of Hadar's prima facie case on both his negligence and strict liability claims, and therefore the defense at issue is not an affirmative defense. Furthermore, Hadar asserted in his complaint that Burlington manufactured the peel ply, and Burlington properly denied that assertion in its complaint, (*see*

Compl. ¶¶ 44, 49; Burlington's Answer ¶¶ 15, 17), and thus the notice-providing purpose of Rule 8(c) has been met. *See Blonder–Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971) (purpose of Rule 8(c) is to "give the opposing party notice of the plea" and a chance to answer it). Therefore, the court finds that Hadar and the cross-claimants have not presented evidence sufficient to raise a question of fact regarding whether Burlington manufactured the SRB Peel Ply, and summary judgment on this issue is appropriate.[1]

### III. Concordia Custom's Motion for Summary Judgment on the Ground that it is an Improper Party

Concordia Custom asserts that it is not liable for Concordia Yacht's obligations and moves for summary judgment on the plaintiff's claims against it and also on the cross-claims asserted by co-defendants. In September, 1990, Concordia Custom purchased substantially all of the assets of Concordia Yacht,[2] with the exception of its cash, accounts receivable and investment assets. (*See* Foster Aff., 3/3/94, Ex. F ("Purchase Agreement")). As part of the Purchase Agreement, Concordia Company, Inc. ("Concordia Company")[3] agreed to license to Concordia Custom the right to use the name "Concordia" and the Concordia mark and logo. Concordia Company also agreed to lease to Concordia Custom the premises which had been leased by Concordia Yacht. The Josher III was manufactured by Concordia Yacht before this transaction occurred, and the issue here is whether Concordia Custom inherited Concordia Yacht's liability, if any, for the alleged flaws in the Josher III.

1. Burlington moves for summary judgment against plaintiff solely on plaintiff's first and second causes of action. After Burlington filed its motion, plaintiff moved to amend his complaint to add three additional causes of action against Burlington. Since Burlington is an improper party, however, Hadar's additional causes of action against Burlington would fail, even if Hadar were allowed to assert them.

Concordia Yacht moves the court to convert its cross-claim against Burlington into a third-party claim in the event that the court dismisses Hadar's causes of action against Burlington for any reason other than that Burlington is an improper party. Since I have found that Burlington is an improper party, I need not reach the merits of this motion.

2. The buyer was actually CCY, Inc., which later changed its name to Concordia Custom Yachts, Inc. In order to minimize confusion, the court will refer to the buyer as Concordia Custom.

3. For an explanation of the relationship between Concordia Company, Concordia Custom and Concordia Yacht *see* discussion *infra* at 1092.

The litigants use both New York and Massachusetts law in their arguments on this issue. Since the law of the two jurisdictions is substantially the same on the issue of successor liability, *Parra v. Production Mach. Co.*, 611 F.Supp. 221, 223 (E.D.N.Y. 1985), the court need not decide the choice of law issue here.

The general rule in New York and Massachusetts is that a company that buys the assets of another is not liable for the debts or liabilities of the seller. *Dayton v. Peck, Stow & Wilcox Co. (Pexto)*, 739 F.2d 690, 692 (1st Cir.1984); *Parra*, 611 F.Supp. at 223. There are four exceptions to this rule which allow liability to be imposed on the buyer if: "(1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." *Parra*, 611 F.Supp. at 223 (quoting *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244, 464 N.Y.S.2d 437, 451 N.E.2d 195 (1983)). Hadar asserts that the transaction between Concordia Yacht and Concordia Custom falls under the second and third exceptions.[4] A transaction will fall under the second exception if it constitutes a de facto merger. *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F.Supp. 1010, 1015 (D.Mass. 1989). A number of courts have found the de facto merger and mere continuation exceptions to the general rule practically indistinguishable, *see, e.g., Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1535 (S.D.N.Y.1985) (Goettel, J.), and following their lead this court will consider the two exceptions together.

Whether a transaction is a de facto merger depends upon whether it meets the following criteria:

(1) There is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets, and general business operations.

(2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.

(3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.

(4) The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F.Supp. at 1015. A transaction can constitute a de facto merger without meeting all of these criteria—the court must weigh the factors individually in each case. *Lumbard*, 621 F.Supp. at 1535.

[5] Hadar does not allege that Concordia Custom expressly assumed Concordia Yacht's obligations, so the fourth criteria of the de facto merger test clearly has not been met. He asserts that there exists a question of fact whether the second criteria has been met because Robert MacGregor, who was the sole shareholder of Concordia Yacht, is a twenty percent shareholder in Concordia Custom and because MacGregor testified that "he became a 20% stockholder in the purchaser as a result of the transaction." (Cooke Aff., 5/24/94, at ¶ 8.) However, the Purchase Agreement clearly states that the consideration for Concordia Yacht's assets was $120,000 in "bank cashier's check or other immediately available funds," (Purchase Agreement § 1.2), and Concordia Cus-

---

**4.** Hadar also asserts that there is a fifth exception allowing liability to be imposed on a buyer when the transaction lacks some of the elements of a purchaser in good faith, and he claims that the sale at issue falls under this exception. (Pl.'s Revised Mem. in Opp'n to Mots. for Summ.J. by Defs. Concordia Custom, Burlington, & Northern

at 10 (quoting *Cyr v. B. Offen & Co.*, 501 F.2d 1145, 1152 (1st Cir.1974))). However, Hadar does not support this assertion with any facts or even with an argument. Since an unsupported assertion is inadequate to oppose a motion for summary judgment, *Project Release*, 722 F.2d at 969, the court need not consider this assertion.

tom has submitted a signed resolution by the directors of CCY, Inc. authorizing the issuance of 20% of its common stock to MacGregor "in exchange for the payment of $1 per share." (Foster Aff., 7/13/94, Ex. I.) In the face of this evidence that the sale was paid for with cash, Hadar's mere hypothesis that there was a stock-for-assets exchange cannot survive, and the second criteria of the de facto test has not been met.

 Hadar has raised factual issues regarding the continuity of enterprise criteria of the de facto merger test. The parties agree that three employees of Concordia Yacht—the key production person, the boat builder, and the office manager—went to work for Concordia Custom immediately after the merger. Concordia Custom denies that there is continuity of employees, however, because Concordia Yacht had between twelve and eighteen employees and Concordia Custom has between forty-five and fifty employees. Concordia Custom also denies that there is continuity of management because of its four directors only Robert MacGregor was formerly associated with Concordia Yacht, and of its three officers only Donald Watson was associated with Concordia Yacht. The problem with these arguments is that de facto mergers require not uniformity between the buyer and seller but rather continuity. *Lumbard,* 621 F.Supp. at 1535; *see also In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution,* 712 F.Supp. at 1016 (finding continuity of management where three of the seller's eight directors became directors of the seller, which had only four directors); *Shannon v. Samuel Langston Co.,* 379 F.Supp. 797, 800 (W.D.Mich.1974) (finding continuity of management although "a policy-making level of management in the form of a new Chairman of the Board" was added). In fact, it is in the nature of mergers that most will produce an enterprise that is larger than either of the two merging companies. Here, plaintiff has presented deposition evidence that the three Concordia Yacht employees who moved to Concordia Custom ran the day-to-day operations of Concordia Yacht and that Watson and MacGregor, the two officers and directors who made the move, were the sole officers

and directors of Concordia Yacht. (*See,* MacGregor Dep. at 25–26.) Therefore, questions of fact remain regarding the importance of the employees and managers who made the move from Concordia Yacht to Concordia Custom and the extent to which they maintained continuity between the two corporations.

It is evident that there was continuity of premises. Prior to the sale, Concordia Yacht leased its premises from Concordia Company. On the closing date, pursuant to the Purchase Agreement Concordia Yacht terminated its lease and Concordia Custom entered into a lease with Concordia Company for the same premises. Concordia Custom argues that because Concordia Yacht did not sell its premises to Concordia Custom there is no continuity of premises. This argument ignores the point of the continuity of premises criteria—if the buyer stays in the same premises and uses the same equipment as the seller, that is an indication of continuity of the entire enterprise. For example, one district court found adequate continuity where the buyer "utilized" the same premises, banking facilities, and insurance company. *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution,* 712 F.Supp. at 1016. Furthermore, the facts that Concordia Yacht's lease termination and Concordia Custom's agreement to enter into a lease were contained in the Purchase Agreement and that Concordia Yacht agreed to transfer all improvements on the property (Purchase Agreement § 1.1) indicate that continuity of premises was a significant aspect of the sale.

There was substantial continuity of assets because Concordia Custom bought from Concordia Yacht its fixed assets (including all vehicles, furniture, fittings, molds, furnishings, machinery, equipment), inventory (including finished goods, works in progress and raw materials), goodwill, patents, designs, drawings, distributor lists, customer lists, marketing information, employment records, and miscellaneous other assets. Cash and accounts receivable were excluded from the sale, but these were of small consequence because Concordia Custom was insolvent at the time of the sale.

Finally, Concordia Custom argues that there is insufficient continuity of enterprise because it never intended to perform the same type of work as Concordia Yacht did and because it has begun a new product line, expanded into Europe, developed new advertising, hired a new design and engineering team, and hired new salespeople. As evidence that the enterprise has substantially continued, Hadar counters that Concordia Custom uses the same name, issues advertisements stating, "Sail a Legend! ... Tradition; more than half a century of craftsmanship & seaworthiness," and continues to use composite epoxy vacuum-bagging technology to build yachts. This evidence is sufficient to raise a question of fact regarding the extent to which Concordia Custom continued Concordia Yacht's enterprise. *See In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution,* 712 F.Supp. at 1015–16 n. 8 (finding that technological innovations, the addition of some new product lines, and the discontinuance of other product lines did not create excessive discontinuity where the primary business remained the same).

Hadar has also raised an issue of fact regarding whether the transaction met the third criteria of the de facto merger test— dissolution of the seller. Hadar asserts that Concordia Yacht filed its last tax return and certificate of dissolution within two months of the sale. Concordia Custom argues, however, that this criteria has not been met because Concordia Company continues to exist and to build custom yachts. (Concordia Custom's Mem. in Supp. of Mot. for Summ.J. at 9.) The court does not have adequate evidence before it to determine the nature of the relationship between Concordia Company and Concordia Yacht. MacGregor, the sole shareholder of Concordia Yacht, owns 70% of the stock of Concordia Company, but the mere fact that the sole shareholder of Concordia Yacht holds a majority stake in another corporation does not inevitably lead to the

conclusion that the two companies are at all interrelated. Concordia Custom asserts that Concordia Yacht was a subchapter S corporation "affiliated" with Concordia Company, but it does not describe the nature of the affiliation. *Id.* In the absence of evidence that Concordia Yacht was a subdivision or department of Concordia Company such that Concordia Company would be considered a continuation of Concordia Yacht, *see, e.g., Roy v. Bolens Corp.,* 629 F.Supp. 1070, 1071 (D.Mass.1986) (declining to hold buyer of division of FMC, Corp. liable when FMC Corp. still existed), the court cannot determine whether Concordia Yacht continues to exist.

Hadar has shown that the transaction between Concordia Yacht and Concordia Custom was characterized by continuity of premises and assets, and he has raised issues of fact regarding whether it also involved continuity of management, personnel and general business operations, and whether the seller dissolved after the transaction. Therefore, the court cannot find that Concordia Custom is not liable as a matter of law for any flaws that may exist in the Josher III and cannot grant summary judgment on this issue.[5]

### IV. Hadar's Motion to Amend Complaint

■ Plaintiff Hadar moves to amend his complaint to add breach of warranty claims against defendants System Three, Burlington, RP Associates, and Northern; Massachusetts Consumer Protection Act ("C.P.A.") claims against defendants Concordia Custom, Concordia Yacht, Burlington, System Three and RP Associates; and additional facts regarding the original causes of action against all defendants. Before addressing the merits of Hadar's motion, the court must decide whether to apply Massachusetts law or the law of another state to plaintiff's claims. A federal court sitting in diversity must apply the choice of law rules of the state in which the court sits. *Klaxon Co. v. Stentor Elec.*

---

5. Hadar claims that an additional reason to deny summary judgment is that Concordia Yacht received inadequate consideration in exchange for its assets. Inadequate consideration is sometimes considered to be a fifth exception to the general rule that a buyer is not liable for the liabilities of a seller of a company. *Lumbard,*

621 F.Supp. at 1535 n. 7. Since the court need not reach this issue in order to deny the motion for summary judgment, however, it declines to consider whether there was inadequate consideration and what the effect of such a finding would be.

*Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). As the following discussion shows, under New York choice of law rules the court must apply Massachusetts law to plaintiff's tort and contract claims.

■ Since this case involves the sale of goods, the contract claims are governed by the Uniform Commercial Code ("U.C.C."). The New York U.C.C. applies to transactions otherwise governed by the U.C.C. and "bearing an appropriate relation to the state." N.Y. U.C.C. § 1–105 (McKinney 1993). New York courts have not interpreted this phrase, and the comment to the statute says merely that "the question what relation is 'appropriate' is left to judicial decision." *Id.* Official Cmt. Federal courts interpreting this phrase in New York and other states have taken into account the residence of the parties, the location of negotiations, the place of purchase of the goods, and the physical location of the goods at issue. *See, e.g., Tarbert Trading, Ltd. v. Cometals, Inc.,* 663 F.Supp. 561, 566 (S.D.N.Y.1987) (Newman, J.) (under New York law factors include residence of the parties, location of negotiations, and, where significant, physical location of the goods at issue); *see also Teel v. American Steel Foundries,* 529 F.Supp. 337, 344 (E.D.Mo.1981) (factors under Missouri U.C.C. include residence of plaintiffs and location of subject matter of contract); *Thornton v. Cessna Aircraft,* 703 F.Supp. 1228, 1234 (D.S.C.1988) (factors under South Carolina U.C.C. include residence of decedent and place of purchase and maintenance of the airplane that was subject of the contract); *Pulte Home Corp. v. Ply Gem Indus., Inc.,* 804 F.Supp. 1471 (M.D.Fla.1992) (under Florida U.C.C. state in which allegedly defective plywood was used had appropriate relation). This approach is in accord with the interpretation of the Fourth Circuit, which uses the "most significant relation" test to determine which state has an appropriate relation to the transaction. *Compliance Marine, Inc. v. Campbell,* 839 F.2d 203, 206–7 (4th Cir.1988).

In this case, the plaintiff is a resident of New York and defendants are residents of Massachusetts, North Carolina, Rhode Island, Washington and New Hampshire. The materials were purchased in New Hampshire, Rhode Island, North Carolina and Washington, but they were delivered to and used in Massachusetts, where the warranties were allegedly breached. Therefore, the case does not have an appropriate relation to New York and the law of Massachusetts, which has the most significant relation to the case, should be applied.

■ The traditional choice of law rule for torts is *lex loci delicti,* which mandates that the court apply the law of the state where the tort occurred. *Schultz v. Boy Scouts of Am., Inc.,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 94, 480 N.E.2d 679, 682 (1985). Although this rule was modified in 1963 by the New York Court of Appeals, *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), and New York courts now apply a "paramount interest" test for choice of law questions, under which the law of the jurisdiction having the "greatest interest in the litigation" is applied, *Lakhaney v. Anzelone,* 788 F.Supp. 160, 162 (S.D.N.Y.1992) (Carter, J.) (citations omitted), "*lex loci delicti* remains the general rule in tort cases to be displaced only in extraordinary circumstances." *Cousins v. Instrument Flyers, Inc.,* 44 N.Y.2d 698, 405 N.Y.S.2d 441, 442, 376 N.E.2d 914, 915 (1978); *see also O'Rourke v. Eastern Air Lines, Inc.,* 730 F.2d 842, 848 (2d Cir.1984). Where the place of the wrong and the place of the injury are different, New York courts will generally apply the law of the place of injury. *Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784, 795 (2d Cir.1986); *Schultz,* 491 N.Y.S.2d at 94, 480 N.E.2d at 682.

This case presents no extraordinary circumstances that would require departure from the general rule that the place of injury governs. The fact that the plaintiff resides in New York does not in itself create sufficient governmental interest in New York to merit application of New York law. The SRB Peel Ply was manufactured in North Carolina, the epoxy resin was manufactured in Washington state, and they were combined to form the laminate in Massachusetts. In products liability cases involving mobile products, such as airplanes or automobile

tires, courts applying New York choice of law rules often consider the mobility of the product to create the sort of extraordinary circumstance meriting departure from the general rule and requiring application of the law of the place of manufacture of the product. *See, e.g., Campbell v. Goodyear Tire & Rubber Co.,* No. 83 Civ. 6282, 1985 WL 1514, at *1 (S.D.N.Y.1985) (Haight, J.); *Elam v. Ryder Automotive Operations, Inc.,* No. 94 CV 151A, 1994 WL 705290 (W.D.N.Y.1994); *but see O'Rourke,* 730 F.2d at 849 (refusing to find extraordinary circumstances "simply because of the transitory nature of the tort"). In this case, however, the epoxy resin, peel ply and laminate were not mobile,[6] so the rationale of the mobile product cases is inapplicable.

Courts have also applied the law of the state in which the products were manufactured, arguing that those states have a large stake in "governing the liability of manufacturers within [their] borders." *Carlenstolpe v. Merck & Co.,* 638 F.Supp. 901, 910 (S.D.N.Y.1986) (Motley, J.). In this case, however, the plaintiff argues not that the peel ply and resin were inherently faulty when they were manufactured but rather that they were unsuitable in combination with each other, giving Massachusetts, the state in which they were combined, a greater interest than either of the states of manufacture. *See Elam,* 1994 WL 705290, at *9 (applying law of New York, where trailer was designed and manufactured, rather than law of Kansas, where defective component of trailer was manufactured). Massachusetts has an interest in the outcome of the case because two of the defendants are located there. Therefore, this court will apply the Massachusetts C.P.A.

### A. Futility

■■■ A district court may deny leave to amend a complaint where the amendment would prejudice the opposing party, where the amendment was made in bad faith, or where the amendment would be futile. *State Teachers Retirement Bd. v. Fluor Corp.,* 654

F.2d 843, 856 (2d Cir.1981). Defendants Concordia Yacht and Concordia Custom assert that Hadar should not be allowed to amend his complaint against them to add claims under the Massachusetts C.P.A. because the claims are procedurally barred as a result of Hadar's failure to send them timely and valid demand letters and thus the amendments would be futile. At least thirty days before filing for relief under the Massachusetts C.P.A. plaintiffs must send a written demand to all proposed respondents. Mass. Gen.Laws Ann. ch. 93A, § 9(3) (West 1984 & Supp.1994). The purposes of the demand letter are to "encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct [and] to operate as a control on the amount of damages which the complainant can ultimately recover if he proves his case." *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 322 N.E.2d 768, 779 (1975). Consequently, a demand letter must provide enough of a description of the alleged damage for the defendants to shape a reasonable settlement offer. *Brandt v. Olympic Constr., Inc.,* 16 Mass.App.Ct. 913, 449 N.E.2d 1231, 1234 (1983). The letter must also list the "specific deceptive practices claimed." *Entrialgo v. Twin City Dodge, Inc.,* 368 Mass. 812, 333 N.E.2d 202, 204 (1975). Plaintiffs need not send demand letters to parties who are not residents of Massachusetts, Mass.Gen.Laws Ann. ch. 93A, § 9(3) (West 1984 & Supp.1994); *see also Burnham v. Mark IV Homes, Inc.,* 387 Mass. 575, 441 N.E.2d 1027, 1032 (1982), so the court need not examine whether Hadar sent valid demand letters to defendants RP Associates, Burlington, Northern, or System Three.

Plaintiff proffers three reasons why his amended complaint against Concordia Yacht and Concordia Custom should not be procedurally barred for failure to serve a timely demand letter. First, he points to letters that he sent to Concordia Yacht and to Concordia Custom on August 12, 1994. Since these letters were not sent at least thirty days before the proposed amended complaint

---

**6.** Although the yacht was arguably mobile, the injury occurred when the yacht was still under

construction and was therefore immobile.

was filed in April 1994, they are not sufficient to satisfy the demand letter requirement of the Act.

Second, plaintiff asserts that an exchange of letters that he had with Robert MacGregor and Donald Watson of Concordia Yacht during the spring of 1991, together with Donald Watson's alleged knowledge of inadequate bonding as early as January 1989, "qualif[y] as proper notification of the defects in Josher III that caused plaintiff's loss complained of herein." (Pl.'s Mem. in Supp. of Cross–Mot. to Am.Compl. & for Partial Summ.J. on Liability Against Defs. & in Opp'n to Mots. for Summ.J. on Behalf of Defs. Concordia Yacht, Concordia Custom & Burlington at 52.) Even assuming that during the course of this correspondence Concordia Yacht and Concordia Custom were alerted to and acknowledged an awareness of the defects in Josher III, the demand letter requirement still would not have been satisfied. In none of the letters at issue does Hadar refer to the specific deceptive practices on which he bases his C.P.A. claim; nor does he inform the defendants that he intends to seek relief under the C.P.A. Consequently, defendants were "without warning that the claimant intend[ed] to invoke the heavy artillery of [ch.] 93A," and they did not have enough information to decide whether to offer him a settlement of his claim. *Cassano v. Gogos,* 20 Mass.App.Ct. 348, 480 N.E.2d 649, 651 (1985).

Third, plaintiff asserts that it was futile for him to send demand letters to Concordia Yacht and Concordia Custom because MacGregor had informed him that Concordia Yacht had neither assets nor insurance to compensate him for the damage to the Josher III. He argues that where a demand letter would be futile it should not be required, but the court has found no support for such a contention, and plaintiff cites no precedent, so this argument is unpersuasive.

Finally, plaintiff argues that amendment should be granted according to the precedent of *Stark v. Patalano Ford Sales, Inc.,* 30 Mass.App.Ct. 194, 567 N.E.2d 1237 (1991).

That case is distinguishable, however, because there the defendant "was served with the amended complaint some five months after the demand letter and, hence, had ample opportunity to investigate and respond to Stark's claim." *Id.* 567 N.E.2d at 1240. In the present case, the defendants were never served with a demand letter prior to service of the proposed amended complaint. Therefore, the plaintiff's proposed amendments under the C.P.A. are procedurally barred as concern Concordia Yacht and Concordia Custom.[7]

### B. Undue Prejudice and No Bad Faith

No defendant has alleged that Hadar's motion to amend was made in bad faith. Burlington alleges that permitting plaintiff to amend his complaint would cause it undue prejudice, but the court need not reach this issue because Burlington is not a proper party. Concordia Yacht also contends that permitting plaintiff to amend his complaint to add causes of action under the C.P.A. would cause it undue prejudice. The court has denied Hadar's motion to add C.P.A. causes of action against Concordia Yacht, however, and Concordia Yacht does not claim that it would be prejudiced if Hadar is allowed to add facts supporting the causes of action that he brought in the original complaint. No other defendants allege undue prejudice. Therefore, Hadar may amend his complaint to add causes of action under the Massachusetts C.P.A. against defendants System Three and RP Associates; to add breach of warranty claims against defendants System Three, RP Associates and Northern; and to add allegations regarding the original causes of action against Concordia Yacht, Concordia Custom, System Three, RP Associates, and Northern.

### V. Defendants' Motions to Dismiss Breach of Warranty, Negligence, and Strict Liability Causes of Action on the Grounds that Solely Economic Damages are Alleged and Privity Does Not Exist

All defendants in this case seek summary judgment on Hadar's strict liability and neg-

---

7. Concordia Yacht and Concordia Custom also argue that plaintiff's CPA causes of action are barred by the statute of limitations. Since the court has determined on other grounds that the CPA causes of action against these defendants are procedurally barred, however, the court need not reach this issue.

ligence causes of action against them on the grounds that Hadar seeks solely economic damages. Additionally, Burlington, Northern, System Three and RP Associates seek summary judgment on Hadar's breach of warranty causes of action on the grounds that there is no privity between them and the plaintiff.

### A. Strict Products Liability and Negligence

The doctrine of strict products liability, allowing consumers to recover from manufacturers or sellers for injuries caused by defective products, was developed in the 1960's, see, e.g., Greenman v. Yuba Power Prods., Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963), and was subsequently incorporated into the Restatement of Torts 2d § 402A. Massachusetts codified the Restatement's definition of strict liability at section 2–318 of the U.C.C. and called it "breach of warranty." Bay State–Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 533 N.E.2d 1350, 1353 (1989); see also Swartz v. General Motors Corp., 375 Mass. 628, 378 N.E.2d 61, 63–64 (1978) (disallowing strict products liability recovery in Massachusetts apart from that provided for in U.C.C. § 2–318). Despite its contract nomenclature, "the Massachusetts law of warranty [is] congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts § 402A (1965)." Back v. Wickes Corp., 375 Mass. 633, 378 N.E.2d 964, 969 (1978); see also Mason v. General Motors Corp., 397 Mass. 183, 490 N.E.2d 437, 442 (1986) (the sole remedy for strict liability in Massachusetts is set out in U.C.C. § 2–318).

The general rule in Massachusetts is that plaintiffs may not recover in either strict liability or negligence for solely economic damages. See Bay State–Spray & Provincetown S.S., Inc., 533 N.E.2d at 1353. Plaintiff asserts, without foundation, that he "does not seek only consequential-economic damages." (Pl.'s Mem. in Supp. of Cross–Mot. to Am.Compl. & for Partial Summ.J. on Liability Against Defs. & in Opp'n to Mots. for Summ.J. by Defs. Concordia Yacht, Concordia Custom, & Burlington at 74.) This claim is meritless since in his strict liability, negligence and breach of warranty claims Hadar seeks solely to recover the costs of repairs, diminution of value of the vessel, loss of use and consequential damages. See Marcil v. John Deere Indus. Equip. Co., 9 Mass. App.Ct. 625, 403 N.E.2d 430, 433 (1980) (economic loss includes "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits") (quoting Alfred N. Koplin & Co. v. Chrysler Corp., 49 Ill.App.3d 194, 7 Ill.Dec. 113, 116, 364 N.E.2d 100, 103 (1977)); see also Bellevue S. Assocs. v. HRH Constr. Corp., 78 N.Y.2d 282, 574 N.Y.S.2d 165, 167, 579 N.E.2d 195, 197 (1991) (economic loss includes "cost of removing and replacing the defective tiles, additional design and construction costs, carting costs, loss of rental income, and diminution of value of the housing project"). Although Hadar claims that several parts of the yacht were damaged when the yacht was turned upside down during the course of repairing the yacht, this damage is properly counted as part of the cost of repair and is thus purely economic.

Plaintiff also argues that the court should permit an exception to the general rule outlined above because the allegedly flawed lamination rendered the yacht unreasonably dangerous. Some courts permit such an exception to the general rule of non-recovery for economic damages, see, e.g., Washington Water Power Co. v. Graybar Elec. Co., 112 Wash.2d 847, 774 P.2d 1199, 1209, amended by 779 P.2d 697 (Wash.1989); Capitol Fuels, Inc. v. Clark Equip. Co., 181 W.Va. 258, 382 S.E.2d 311 (1989), although some have limited the exception to cases in which the plaintiff is a consumer. See, e.g., Sherman v. Johnson & Towers Baltimore, Inc., 760 F.Supp. 499 (D.Md.1990) (applying admiralty law). Still others have rejected the exception altogether. See, e.g., Karshan v. Mattituck Inlet Marina & Shipyard Inc., 785 F.Supp. 363 (E.D.N.Y.1992) (applying admiralty law); Bocre Leasing Corp. v. General Motors Corp., 84 N.Y.2d 685, 621 N.Y.S.2d 497, 645 N.E.2d 1195 (1995). Massachusetts has declined to apply the "unreasonably dangerous" exception, Bay State–Spray & Provincetown S.S., Inc., 404 Mass. at 107, 533 N.E.2d 1350; see also Marcil v. John Deere Indus. Equip.

*Co.,* 9 Mass.App.Ct. 625, 403 N.E.2d 430 (1980), but it has not yet addressed the issue of allowing an exception in the case of consumers.

The court need not decide whether Massachusetts would permit an unreasonably dangerous product exception in this case, however, because Hadar has presented no evidence that the alleged flaw rendered the yacht unreasonably dangerous. The defendants assert that any damage that the yacht sustained was purely cosmetic. Hadar asserts that a friend with nautical experience told him that as a result of the alleged problem with the laminate the boat was unseaworthy, but such hearsay is not adequate to carry Hadar's evidentiary burden. In the absence of evidence that the delamination was more than a cosmetic problem, and since solely economic damages are alleged, summary judgment on plaintiff's strict liability and negligence causes of action is appropriate as a matter of law.

### B. Implied Warranty

The doctrine of express and implied warranties, codified in the U.C.C., also allows buyers to recover from manufacturers and sellers for injuries caused by defective products and also to recover the cost of defective products themselves. Hawkland U.C.C. Series §§ 2–313—2–315 (Art. 2) (1992). Section 2–318 of the U.C.C. eliminates the requirement of privity in some warranty causes of action. *See* Mass.Gen. Laws Ann. ch. 106, § 2–318 (West 1990). The Massachusetts version of section 2–318, which was amended in 1971 to abolish the privity of contract requirement in breach of warranty cases, does not explicitly limit its coverage to cases in which the plaintiff has suffered personal injury as a result of the defective product, and through the early 1980's Massachusetts courts assumed that the privity requirement had been abolished for all breach of warranty causes of action regardless of the type of injury claimed by the plaintiff. *See, e.g., Burnham,* 441 N.E.2d at 1031; *Cameo Curtains, Inc. v. Philip Carey Corp.,* 11 Mass.App.Ct. 423, 416 N.E.2d 995, 998 (1981).

Recently, however, several opinions have brought Massachusetts law into accordance with the majority of states by making it clear that section 2–318 does not abolish the privity requirement when the plaintiff seeks to recover solely economic damages. In 1988, the First Circuit held that section 2–318 "is designed to cover breach of warranty actions that are in essence products liability actions, and is not designed as an alternative for contractually based warranty claims." *Wilson v. Hammer Holdings, Inc.,* 850 F.2d 3, 8 (1st Cir.1988). The court noted that the official comment to the 1973 amendment of section 2–318 suggested that the section should have the same statute of limitations period as tort actions and contract actions involving personal injuries, finding in the comment "an indication that at least the primary purpose of section 2–318 is to govern actions involving personal injuries...." *Wilson,* 850 F.2d at 8. The court declined, however, to decide whether section 2–318 governs breach of warranty causes of action where solely economic damages are sought.

In 1989, the Massachusetts Supreme Judicial Court answered the question left open by the First Circuit, finding that where only economic loss is involved a breach of warranty action is contract-based and governed by section 2–725 of the U.C.C., while breach of warranty actions seeking to recover for physical injuries are tort-based and governed by section 2–318. *Bay State–Spray & Provincetown S.S., Inc.,* 533 N.E.2d at 1353. As in the First Circuit opinion, the Supreme Judicial Court based its finding on the congruence between section 2–318 and tort concepts, as well as on the fact that the section's statute of limitations parallels tort statutes of limitations. Although this case involved the applicability of statutes of limitations, not the applicability of the relaxed privity requirements contained in section 2–318, the court did not limit its discussion of the scope of section 2–318 to statute of limitations issues. Since section 2–318 governs only tort-based actions, the traditional rule requiring privity in breach of warranty actions continues to govern contract-based actions. The present case, which seeks recovery solely for economic damages, is clearly contract-based and governed by this rule. Since plaintiff admittedly lacks privity with RP Associates, Sys-

tem Three and Northern, he cannot maintain his breach of warranty claims against them, and summary judgment is granted on those causes of action as a matter of law.

### VI. Northern's Motion for Summary Judgment of Cross–Claims

Northern has moved for summary judgment of the cross-claims asserted against it by Concordia Custom, RP Associates, and System Three. All of plaintiff's claims against Northern have been dismissed as a matter of law, and none of the cross-claimants have opposed this motion, so the court grants summary judgment for Northern on these cross-claims.[8]

### VII. Concordia Yacht and Concordia Custom Motions for Summary Judgment Based on Disclaimers in the Contract

Concordia Yacht and Concordia Custom move for summary judgment on Hadar's breach of warranty claims against them on the grounds that those claims are barred by the contract signed by Hadar and Concordia Yacht (the "Construction Agreement"). They also move for summary adjudication of the issue of damages on the grounds that the Construction Agreement precludes Hadar from recovering consequential damages.[9]

■ The Construction Agreement specifies that Massachusetts law should be applied to all disputes arising from the contract, and both parties accede to this choice of law. Under New York law, a choice of law clause in a contract will be honored regarding matters of substance as long as the choice of law specified does not violate fundamental policies of New York law. *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir.1987). Since both parties accede to the use of Massachusetts law, and since the disputed work on the yacht occurred in Massachusetts, the court will apply Massachusetts law to their dispute.

■ The relevant portion of the Construction Agreement is entitled "Builder's Warranty." The first paragraph of this warranty sets out an express warranty, reading in part, "The Builder hereby warrants to Owner, and it [sic] successors and assigns, that the Yacht will be free of defects in workmanship and materials for a period of one (1) year after final delivery of the vessel to the Owner." The second paragraph of the Builder's Warranty contains limitations on the warranty and reads in part,

Notwithstanding the foregoing, the Builder shall not be liable for failure of any Owner supplied equipment or other articles or appliances installed, but not manufactured by Builder, except if the defect is as a result of the negligence of Builder. Builder shall assign, without recourse, all original equipment manufacturer's warranties to Owner and Builder shall use its best efforts to continue to obtain a replacement or adequate compensation therefor from the manufacturer of any defective material or equipment. Builder shall not be liable for any consequantial [sic] damages, of any kind or nature, including, but not limited to, loss of profits, loss of time or delays caused by said defective workmanship or defective materials, and in this connection, it is specifically agreed by the parties hereto that the liability of Builder under this warranty is specifically limited to the replacement of [sic] repair of said defective workmanship or defective materials at Builder's yard or as otherwise provided herein, free of charge to the Owner, a part or parts of Yacht fabricated by Builder as may fail through such defects in workmanship or materials within the warranty period, as aforesaid, or reimubrse [sic] the Owner as provided in this paragraph. . . .

Plaintiff argues that neither the replace or repair limitation nor the limitation of consequential damages applies to defects in builder-supplied goods. He claims that because the first sentence of the second paragraph limits the builder's liability for defects in

8. Northern has not moved for summary judgment on the cross-claim asserted against it by Concordia Yacht.

9. Concordia Yacht also contends that plaintiff does not state a claim of warranty of fitness for a

particular purpose. The court will not address this assertion because Concordia Yacht has not submitted a motion to dismiss or for summary judgment on that ground. Rule 7(b), F.R.Civ.P.

owner-supplied equipment, the rest of the paragraph applies only to owner-supplied equipment as well. This court, finding the relevant portion of the contract unambiguous and interpreting it as a matter of law, *see USM Corp. v. Arthur D. Little Sys., Inc.*, 28 Mass.App.Ct. 108, 546 N.E.2d 888, 892 (1989), does not accept Hadar's interpretation of the contract. The second sentence of the paragraph obligates the builder to assign manufacturers' warranties to the owner. The builder possesses warranties only on the equipment that he bought, so this sentence must apply to builder-supplied materials. Since the second sentence applies to the builder's obligations for materials it supplied, there is no reason to read the rest of the paragraph as pertaining solely to owner-supplied materials.

### A. Implied Warranties

■ The Builder's Warranty does not disclaim liability for implied warranties. There is no language in the contract specifically disclaiming implied warranties, and Concordia Yacht stresses that it does not argue "that the Construction Agreement disclaims an implied warranty of merchantability and the implied warranty of fitness for a particular purpose." (Mem. in Opp'n to Pl.'s Mot. to Am.Compl. & for Summ.J. as Respects Liability, & in Further Supp. of Concordia Yacht's Mot. for Summ.J. at 59.)

Nonetheless, Concordia Yacht contends that plaintiff may not recover on his breach of implied warranty claims because the replace or repair provision of the Construction Agreement "operates to bar plaintiff's cause of action based on breach of warranty because any necessary 'repairs and replacements' were made during that period." *Id.* This argument is completely unfounded. The replace or repair provision specifically limits "the liability of Builder under *this warranty*" (emphasis added)—it does not purport to limit Hadar's remedies under any implied warranties that may apply. Furthermore, under the Massachusetts U.C.C. a clause attempting to limit Hadar's remedies for breach of the implied warranties of merchantability and fitness for a particular pur-

pose would be unenforceable. Mass.Gen. Laws Ann. ch. 106, § 2–316A (West 1990). Therefore, there is no basis for granting summary judgment on the plaintiff's breach of implied warranty claims.

There is no basis for the defendants' contention that Hadar may not recover consequential damages if he makes out a case of breach of implied warranty because, as already discussed, any limitation on Hadar's remedies for breach of implied warranty would be unenforceable. Therefore, defendants' motion for summary adjudication of the issue of consequential damages is denied as regards Hadar's claims of breach of implied warranty.

### B. Express Warranties
#### 1. One–Year Replace or Repair Limitation

■ In opposition to defendants' motion for summary judgment on the express warranty, plaintiff argues that the replace or repair clause failed of its essential purpose, is unconscionable, and deprives plaintiff of an adequate minimum remedy. Because the court finds that the plaintiff has raised a question of fact whether the clause failed of its essential purpose, precluding summary judgment for the defendants on the express warranty claims, the court need not address the plaintiff's other contentions here.[10]

■ Parties to a contract may agree to limit the remedies otherwise available under the U.C.C., but a limitation ·on a remedy is unenforceable "[w]here circumstances cause [the remedy] to fail of its essential purpose." Mass.Gen.Laws Ann. ch. 106, § 2–719 (West 1990). To determine whether a remedy fails of its essential purpose the court must look at the way it operates under the circumstances of the transaction at issue. Mass. Gen.Laws Ann. ch. 106, § 2–719 cmt. (West 1990); *see also Kos Kam Inc. v. Triangle Pacific Corp.*, No. Civ. 86–0101–S, 1987 WL 6979, at *2 (D.Mass. Jan.. 21, 1987). A remedy fails where "applying it would cause the buyer to receive less than what the contract calls for." *Id.* This may occur as a result of a quality inherent in the defect, for example

---

**10.** For a discussion of plaintiff's unconscionability argument, see *infra* at 1101–1102.

where the defect cannot be cured, where it is impossible to discover which of many parts has created the defect, or where the defect has completely destroyed the entire product. *See Id.; Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.,* 767 F.Supp. 363, 373–74 (D.Mass.1991). A remedy may also fail as a result of the warrantor's actions, as where "the seller completely refuses to honor its duty to repair or replace." *Boston Helicopter Charter, Inc.,* 767 F.Supp. at 373–74.

At issue here is what Concordia Yacht knew and when it knew it. If Concordia Yacht knew about a defect in the laminate prior to the end of the warranty period and as a result of either intransigence or inability failed to remedy that defect, then the remedy failed of its essential purpose. If, however, there was a latent defect that Concordia Yacht did not know about until after the termination of the warranty period, then the remedy did not fail. *Id.* at 374. The boat was delivered in May 1989, so the express warranty period ended May 1990.

Plaintiff has introduced evidence putting into issue whether Concordia Yacht knew of the defective laminate prior to the end of the warranty period and failed to remedy it. Donald Watson of Concordia Yacht testified in his deposition that as early as December 1988 he found that the laminate of the deck, which had been manufactured in the same way as the laminate of the hull, had not bonded properly. He testified further that prior to completion of the boat he received a report issued by System Three warning that System Three Phase Two resin did not bond properly with SRB Peel Ply. Finally, he stated that in May 1989, prior to delivery of the boat, he noticed that there was a problem with the hull that looked like print-through, that he believed the problem was caused by resin shrinkage, and that in late summer 1989 he noticed the same problem. (Watson Dep. at 77). This testimony indicates that Watson formed a belief within the warranty period that the hull was defective.

Watson's testimony also provides at least an indication that the defect that caused the print-through was never remedied by Concordia Yacht. Watson testified that he attempted to remedy what he perceived as print-through by sanding and repainting the hull prior to delivery and during the summers of 1989 and 1990. In October, 1990, however, according to his testimony, he noticed that portions of the hull had delaminated, indicating that layers of the laminate had not bonded properly, and in November, 1990, Concordia Custom (under contract from Concordia Yacht) attempted to remedy the delamination by "removing the outside skin from that portion of the hull and relaminating it and fairing it and painting that part of the hull." (Watson Dep. at 97.) According to Hadar's deposition, the delamination, which he described as "bubbling," continued after that repair effort. (Hadar Dep. at 63.) It is unclear from the evidence presented whether the defect that caused the print-through is the same defect that caused the later delamination. Watson testified that what he had initially perceived to be print-through was actually "a surface instability problem caused by resin softening" which resulted from exposure to heat, and that the delamination resulted from the resin's poor bonding which was exacerbated by exposure to heat. (Watson Dep. at 70, 105.) If the two conditions stemmed from the same defect, then the evidence offered by Hadar indicates that Concordia Yacht failed to remedy the defect that it had noticed within the warranty period.

Additionally, Hadar has presented evidence that the System Three technical report and Watson's discovery regarding the poor bonding of the deck laminate served to notify Concordia Yacht prior to completion of the yacht that the epoxy resin and the peel ply did not bond properly. If it knew of and failed to correct the potential defect, Concordia Yacht could hardly claim that it honored its obligation to repair or replace. Therefore, the plaintiff has presented ample evidence to create a question of fact whether the remedy failed of its essential purpose, and summary judgment is inappropriate on the express warranty claims.

*2. Consequential Damages Limitation*

Concordia Yacht and Concordia Custom argue that even if Hadar is entitled to some remedy for the alleged breaches of the

express warranty the consequential damages limitation in the Builders Warranty precludes him from recovering consequential damages. The Massachusetts U.C.C. contains two restrictions on limitations of consequential damages for breaches of express warranties. First, as with all limitations on manufacturers' liability for breach of express warranties regarding consumer goods, the limitation cannot be enforced unless the manufacturer "maintains facilities within the commonwealth sufficient to provide reasonable and expeditious performance of the warranty obligations." Mass.Gen.Laws Ann. ch. 106, § 2–316A (West 1990). Concordia Yacht's boat manufacturing and repair facilities were located in South Dartmouth, Massachusetts until those facilities were purchased by Concordia Custom in September 1990, well after the expiration of the express warranty period. Hadar has not alleged that these facilities were unable to perform the warranty obligations, so section 2–316A does not bar the operation of the limitation on consequential damages.

The second restriction on limitations of consequential damages is that the limitation may not be unconscionable. Mass.Gen.Laws Ann. ch. 106, § 2–719(3) (West 1990). In Massachusetts, courts assess unconscionability on a case-by-case basis with an eye to preventing "oppression or unfair surprise." *Boston Helicopter Charter, Inc.*, 767 F.Supp. at 374–75.

Hadar has not presented evidence indicating that the consequential damages limitation is the product of unfair surprise. He asserts, without providing evidence, that the contract is a "standard builders [sic] form contract." (Pl.'s Mem. in Supp. of Cross–Mot. to Am. Compl. & for Partial Summ.J. on Liability Against Defs. & in Opp'n to Mots. for Summ.J. on Behalf of Defs. Concordia Yacht, Concordia Custom, & Burlington at 60). This factor does not indicate unfairness, however, in the absence of an indication that the terms of the contract were fixed and not subject to negotiation, *see, e.g., Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 268 (E.D.Mich.1976) (defendant's representative was not authorized to alter contract terms), and Hadar has made no such allegation.

Hadar also argues that the limitation of consequential damages clause is unfair because Concordia Yacht did not disclose the flaws in the yacht and therefore Hadar did not voluntarily agree to the allocation of risk in the Builder's Warranty. This argument is unpersuasive because in determining unconscionability "[t]he relevant consideration is the circumstances at the time the contract was made, and not the circumstances as they later developed," *Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 408 N.E.2d 1370, 1375 (1980), and Hadar does not allege that Concordia Yacht practiced deception when it entered into the contract.

There is no evidence before the court indicating that the consequential damages clause is oppressive. Under Massachusetts law, "limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." Mass.Gen.Laws Ann. ch. 106, § 2–719(3) (West 1990). Hadar has not alleged personal injury, so the limitation is not prima facie unconscionable. Furthermore, Massachusetts courts have often upheld limitations on consequential damages. *See, e.g., Canal Elec. Co. v. Westinghouse Elec. Corp.*, 406 Mass. 369, 548 N.E.2d 182 (1990). In the absence of evidence that this consequential damages clause somehow deprives Hadar of his minimum adequate remedies, *see* Mass. Gen.Laws Ann. ch. 106, § 2–719 cmt. (West 1990), the court must grant summary judgment for the defendants on this issue.

*VIII. Plaintiff's Motion for Summary Judgment*

Plaintiff has moved for an order "pursuant to Rule 56, granting plaintiff partial summary judgment against defendants on liability issues." (Notice of Cross–Mot. on Behalf of Pl. Richard Hadar to Amend the Compl. & for Partial Summ.J. Against Defs. on Liability Issues.) Despite this unambiguous language, Concordia Custom claims that plaintiff has moved for summary judgment only as regards his C.P.A. claims, and Concordia Yacht completely neglects to address Hadar's summary judgement motion as regards the non-C.P.A. claims. Since plaintiff's language

in his motion is clear, and since he has briefed the issue of summary judgment as pertains his breach of warranty claims, the court will consider plaintiff's motion for summary judgment with respect to both C.P.A. and non-C.P.A. causes of action.

### A. Consumer Protection Act Claims

The C.P.A. outlaws "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass.Gen.Laws Ann. ch. 93A, § 2 (West 1984). For aid in interpreting this broad language, courts are guided by the interpretations of section 5(a)(1) of the Federal Trade Commission Act by federal courts and the Federal Trade Commission, as well as by the regulations issued by the Massachusetts attorney general. Mass.Gen. Laws Ann. ch. 93A, § 2 (West 1984). Both failure to disclose and misrepresentation constitute unfair and deceptive practices. First, it is an unfair or deceptive act to fail to disclose facts that are material or that would influence a party's decision to enter into the transaction. Mass.Regs.Code tit. 940, §§ 3.05(1), 3.16(2) (1994). The duty to disclose is limited to facts that are known at the time of the transaction—"[t]here is no liability for failing to disclose what a person does not know." *Underwood v. Risman,* 414 Mass. 96, 605 N.E.2d 832, 835 (1993). Secondly, it is an unfair or deceptive act to make a "claim or representation . . . by any means concerning a product which directly, or by implication . . . has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect." Mass.Regs. Code tit. 940, § 3.05(1) (1994). Unlike the duty to disclose, a misrepresentation may occur in the absence of actual knowledge—"a negligent misrepresentation of fact the truth of which is reasonably capable of ascertainment is an unfair and deceptive act or practice within the meaning of [ch.] 93A, § 2(a)." *Glickman v. Brown,* 21 Mass.App.Ct. 229, 486 N.E.2d 737, 741 (1985); *see also Briggs v. Carol Cars, Inc.,* 407 Mass. 391, 553 N.E.2d 930, 933 (1990); *Acushnet Fed. Credit Union v. Roderick,* 26 Mass.App.Ct. 604, 530 N.E.2d 1243, 1245–46 (1988) (liability may accrue where speaker has not "checked the available facts").

### 1. RP Associates

■ Plaintiff alleges that defendant RP Associates has committed unfair and deceptive acts and has also made willful use of unfair and deceptive practices in violation of chapter 93A of the Massachusetts C.P.A. Defendant RP Associates asserts that plaintiff does not claim that RP Associates violated section two of the C.P.A., made any misrepresentations, or breached any warranties.

Plaintiff alleges that RP Associates supplied the Knytex A130 fiberglass and System Three epoxy resin used in the manufacture of the Josher III. He alleges further that the resin softened at a low temperature, that a "pick yarn" woven into the fiberglass permitted resin to accumulate and aggravated the resin softening, that the resin was incompatible with the peel ply and the fiberglass, and that RP Associates failed to warn Concordia Yacht about these defects. These allegations do not state a claim of unfair and deceptive acts because plaintiff nowhere alleges that RP Associates was aware of the conditions about which he asserts RP Associates should have warned Concordia Yacht. In fact, he asserts that RP Associates never tested the products it distributed, emphasizing that RP Associates was unaware of any possible defects. In the absence of even an assertion that RP Associates either knew of any defects in the products that it distributed or negligently represented that the alleged defects were not present, summary judgment is denied to the plaintiff on his C.P.A. causes of action against RP Associates, and summary judgment is entered for RP Associates. *See Project Release,* 722 F.2d at 969 (summary judgment may be granted to non-moving party where no genuine issues of material fact are shown); *Siderius, Inc. v. M.V. "Ida Prima",* 613 F.Supp. 916, 923 (S.D.N.Y.1985) (Leval, J.) ("[m]oving for summary judgment is not without its risks to the moving party").

### 2. System Three

Plaintiff alleges that defendant System Three has committed unfair and deceptive acts and has also made willful use of unfair and deceptive practices in violation of chapter 93A of the C.P.A. These C.P.A. claims

are based on several alleged acts. First, plaintiff asserts that the Phase Two epoxy resin manufactured by System Three and used in the manufacture of the Josher III was incompatible with the SRB Peel Ply and that as a result the hull laminate did not bond properly. He asserts that System Three knew of the incompatibility as early as 1986, that it asserted after that date that its epoxy resin was appropriate for use with peel ply, and that it did not warn its customers of the incompatibility.

■ It is uncontested that System Three manufactured the epoxy resin and that the resin was incompatible with SRB Peel Ply. System Three claims, however, that it was unaware of the incompatibility until Concordia Yacht sent it laminate samples taken from the deck of the Josher III for testing purposes in December, 1988, and that as soon as it discovered the incompatibility it informed Concordia Yacht of the fact. The basis for plaintiff's assertion that System Three knew of the incompatibility earlier is a memorandum from W. Kern Hendricks of System Three to RP Associates dated December 31, 1988, stating, "Tests we did two years ago and repeated just last week show that the secondary bond of Phase Two to Phase Two is excellent after post cure providing that the proper peel ply was used on the first laminate." Contrary to plaintiff's assertion, this memo does not prove that System Three had discovered two years earlier that its epoxy resin was incompatible with SRB Peel Ply. The statement is at best ambiguous—the 1986 tests may have shown only that Phase Two bonds well to Phase Two, and Hendricks may have added the caution about using the proper peel ply merely out of prudence. On the other hand, it is certainly possible that the 1986 tests showed that SRB Peel Ply was incompatible with the resin. Given Hendricks' denial that he knew about the incompatibility prior to 1988, a factual question remains, making summary judgment inappropriate.

Hadar also claims that System Three affirmatively misrepresented that its Phase Two epoxy resin was compatible with all types of steel ply. System Three issued a brochure in 1987 containing the following instruction

on how to use its epoxy resin to construct a hull laminate:

> The skin next to the mold is laminated first and may be allowed to cure prior to attaching the cord. When done this way, peel ply should be used as the last layer and removed after the skin has hardened leaving a good bonding surface. The core is bedded in thickened Phase Two epoxy and vacuum-bagged until the Phase Two has set.

This claim that the epoxy resin can be used with steel ply obligates System Three to warn its customers about any incompatibilities between epoxy resin and SRB Peel Ply that are "readily ascertainable." *Glickman,* 486 N.E.2d at 741. Summary judgment is inappropriate on this point, however, because there remains a question of fact regarding whether information regarding the incompatibility was "readily ascertainable."

Plaintiff also claims that the epoxy resin had a low heat transition temperature, causing it to soften at a low temperature, and that this characteristic impeded its ability to bond, making the epoxy resin inappropriate for use on dark-hulled boats. He claims further that System Three failed to warn Concordia Yacht about this defect. Plaintiff does not prove, however, that System Three either claimed that its epoxy resin was appropriate for use on dark-hulled boats or had actual knowledge that the resin would not bond properly when used on such boats. Therefore, summary judgment cannot be granted on this point.

**B. Express and Implied Warranty Claims Against Concordia Yacht and Concordia Custom**

**1. Express Warranty Claims**

■ Under the Massachusetts U.C.C., "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Mass.Gen.Laws Ann. ch. 106, § 2–313(1) (West 1990). Hadar claims that express warranties regarding the Josher III were created by several statements made in a document entitled "General Specifications

for 52' Performance Cruising Boat." This document is undated and unsigned, and Hadar provides no explanation of how the document was created or whether it can be considered a promise by Concordia Yacht. Therefore, the court cannot determine whether the statements created express warranties, and summary judgment on plaintiff's breach of express warranty claims is inappropriate.

### 2. Implied Warranty Claims

■ Hadar claims that Concordia Yacht and Concordia Custom breached the warranties of merchantability and fitness for a particular purpose. A warranty of fitness for a particular purpose is created "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Mass.Gen. Laws Ann. ch. 106, § 2–315 (West 1990). Hadar asserts that the terms of the contract informed Concordia Yacht that the yacht was to be used for offshore racing, but he does not point to any specific contract provisions that indicate this. Concordia Yacht disputes that the yacht was built for a particular purpose, pointing to Hadar's deposition testimony that the Josher III was purchased for use as a pleasure yacht and raising an issue of fact on this point precluding the entry of summary judgment.

■ Since Concordia Yacht was in the business of selling yachts, a warranty of merchantability was clearly created. Mass.Gen. Laws Ann. ch. 106, § 2–314(1) (West 1990). A warranty of merchantability requires that a product be "fit for the ordinary purposes for which such goods are used." Mass.Gen. Laws Ann. ch. 106, § 2–314(2) (West 1990). The warranty "is primarily directed at the operating essentials of a product.... It is not intended to guarantee high quality or perfection of detail." *Hannon v. Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 434 N.E.2d 611, 616 (1982) (quoting *Tracy v. Vinton Motors, Inc.*, 130 Vt. 512, 296 A.2d 269 (1972)). "Hadar does not complain of a loss of perfection of detail. Rather, he complains that his yacht was not seaworthy...."

(Pl.'s Mem. in Supp. of Cross–Mot. to Am. Compl. & for Partial Summ.J. on Liability Against Defs. & in Opp'n to Mots. for Summ.J. on Behalf of Defs. Concordia Yacht, Concordia Custom, & Burlington at 66.) Concordia Yacht disputes this characterization of the extent of the damage to the yacht and argues that the damage was merely cosmetic. Defendant bases this assertion on Hadar's deposition testimony that after the boat was repaired he was offered $600,000 for its purchase and on the fact that even after the delamination at the Annapolis boat show the yacht was sailed to Florida. *See also* discussion *supra* at 30–31. Given this factual dispute regarding the extent to which the defective laminate impaired the normal functioning of the boat, summary judgment is inappropriate on this point.

### IX. Conclusion

Summary judgment is granted in favor of Burlington on all causes of action asserted against it by plaintiff and on all cross-claims asserted against it by co-defendants. Summary judgment is denied to Concordia Custom on the grounds that it is an improper party. Summary judgment is granted in favor of all defendants on plaintiff's strict liability and negligence causes of action. Summary judgment is granted to defendants System Three, Northern and RP Associates on plaintiff's breach of warranty causes of action against them. Summary judgment is denied to Concordia Yacht and Concordia Custom on plaintiff's breach of express and implied warranty causes of action against them, but plaintiff is precluded from recovering consequential damages from them for breach of express warranties. Northern is granted summary judgment on the cross-claims brought against it by Concordia Custom, RP Associates and System Three. Plaintiff may amend his complaint to add causes of action under the Massachusetts C.P.A. against defendants System Three and RP Associates; to add breach of warranty claims against defendants System Three, RP Associates and Northern; and to add allegations regarding the original causes of action against Concordia Yacht, Concordia Custom, System Three, RP Associates and Northern. Summary

judgment is denied to plaintiff and granted to RP Associates on plaintiff's Massachusetts C.P.A. causes of action against RP Associates. Summary judgment is denied to plaintiff on the issue of System Three's liability for C.P.A. violations and on the issue of Concordia Yacht and Concordia Custom's liability for breach of express and implied warranties.

IT IS SO ORDERED.